## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:23-CR-400 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| DELANTE DOWELL, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

### I.     Procedural History

On July 25, 2023, a grand jury charged Defendant with one count of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and forfeiture. (ECF No. 1, PageID #1–2).  On January 3, 2024, Defendant moved to suppress the firearm in this case because it was recovered as a direct result of Defendant's unlawful seizure and a subsequent search in violation of Defendant's Fourth Amendment rights.  (ECF No. 19, PageID #56). Defendant also requested an evidentiary hearing on his motion.  (*Id*. at PageID #62).

The Government opposed Defendant's motion on January 17, 2024.  (ECF No. 22).  The Government argues that the officers had reasonable suspicion to stop Defendant based on the totality of the circumstances because they witnessed him committing a crime.  (*Id*. at PageID #72).

On March 11, 2024, the Court held a hearing on Defendant's motion to suppress.  (ECF No. 26).  The Court heard testimony from Government witnesses Stephen Cox, Kevin Cesaratto, and Matthew Curley, ATF Task Force Officers ("TFO") present at Defendant's arrest.  (*Id*. at PageID #87).  The Court also heard testimony from Defendant's witness, Elginia Garrett, the driver

1

of the vehicle at the time of Defendant's arrest.  (*Id*.).

On April 10, 2024, Defendant submitted a post-hearing brief in support of his motion. (ECF No. 30).  In his brief, Defendant admits that he does not have standing to suppress the firearm if it was in the center console of Ms. Garrett's vehicle, as she testified.  (*Id*. at PageID #228). Defendant argues that the officers lacked probable cause to conduct a warrantless arrest and seizure, so the Court should suppress the weapon law enforcement retrieved from Defendant.  (*Id*. at PageID #229).

On April 11, 2024, the Government filed a post-hearing brief in opposition to Defendant's motion.  (ECF No. 31).  The Government contends that this was a lawful investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  (*Id*. at PageID #237).  The officers were permitted to order Defendant out of the car and conduct a pat-down search based on reasonable suspicion that he was armed and dangerous.  (*Id*. at PageID #239).  The Government argues that the officers had more than reasonable suspicion that Defendant was armed and dangerous because they saw him carrying a firearm and believed he likely had committed a crime.  (*Id*. at PageID #240).

For the following reasons, Defendant's motion to suppress is **DENIED**.

## II.    Legal Standard

"[I]n seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression."  *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  To deter law enforcement from violating the Fourth Amendment, all evidence obtained by an unconstitutional search and seizure is inadmissible in federal court.  *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (*citing*

2

*Mapp v. Ohio*, 367 U.S. 643, 654 (1961)).

There are three types of permissible, warrantless encounters between police and citizens: "(1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or *Terry* stop which must be predicated upon 'reasonable suspicion;' and (3) arrests which must be based upon 'probable cause.'" *Id*. at 380.  Neither party argues that this was a consensual encounter.

### III.    Analysis

#### a.  *Vehicle Search*

In Defendant's motion, he contends, "[l]aw enforcement also erroneously reported that the weapon was found on Mr. Dowell's person, when they actually discovered it in the vehicle's console." (ECF No. 19, PageID #58).  At the time of the motion, Defendant did not cite to any evidence to support that proposition.  At the evidentiary hearing, Ms. Garrett testified that on October 28, 2022 she had a firearm in the center console of her car and it was not on her person when she entered the liquor store.  (ECF No. 29, PageID #194).  Despite claiming that officers removed the firearm from the vehicle, Ms. Garrett admitted that she did not see the gun until the officer placed the firearm on the hood of her car.  (*Id*. at PageID #206).  Defendant concedes that if the Court finds that the firearm was retrieved from the vehicle, then Defendant does not have standing to suppress the firearm found in Ms. Garrett's vehicle.  (ECF No. 30, PageID #228) (citing *United States v. Russell*, 31 F.4th 1009 (6th Cir. 2022)).  In *United States v. Rogers*, the Sixth Circuit found that a defendant in the passenger seat of his girlfriend's car failed to meet his burden to establish standing to challenge the search of the vehicle because he was neither owner nor driver of the vehicle and did not have complete dominion and control over the car.  97 F.4th 1038, 1042

(6th Cir. 2024).  Even if the Court were to conclude, contrary to the evidence, that the firearm was removed from the center console of Ms. Garrett's vehicle, Defendant lacks standing to suppress that evidence.  As this line of reasoning leads to a denial of Defendant's motion, the Court will turn to the question of suppression if the firearm was found on Defendant's person.

### b.  Search of Defendant's Person

Defendant's initial motion argues that the stop in question was a *Terry* stop and that the officers lacked reasonable suspicion to engage in the investigatory stop.  (ECF No. 19, PageID #59–61).  In its opposition, the Government also addressed whether there was reasonable suspicion.  (ECF No. 22, PageID #76–78).  In his post-hearing brief, Defendant argues for the first time that the stop in question was an arrest and law enforcement did not possess the requisite probable cause.  (ECF No. 30, PageID #225).  In its post-hearing brief, the Government again addresses the stop as a *Terry* stop pursuant to reasonable suspicion.  (ECF No. 31, PageID #237).  Defendant argues that "there is no question that police approached Mr. Dowell with the sole intention of arresting him."  (ECF No. 30, PageID #224).

*Terry* "authorizes police officers to conduct temporary investigative stops without a warrant or probable cause." *United States v. McMullen*, 103 F.4th 1225, 1229 (6th Cir. 2024).  To justify the stop, police must have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id*. (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).  During a *Terry* stop the "detention must be temporary and last no longer than is necessary" and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Bennett v. City of Eastpointe*, 410 F.3d 810, 836 (6th Cir. 2005).  "[O]fficers may draw their weapons or use handcuffs so long as circumstances warrant that precaution." *Id*.  To justify a pat-down search

or use handcuffs, the officers must have a reasonable belief that the suspect is armed and dangerous. *Id.*

TFO Cox testified that the officers were at the Kinsman Liquor parking lot on October 28, 2022 because they were working a joint crime reduction detail and looking to see if anyone entering or exiting the store had a gun.  (ECF No. 29, PageID #120).  TFO Cox was asked, "if someone walks into this store carrying a firearm, then they might have committed criminal trespass, and depending on the circumstances … from your perspective, if you're in that parking lot and see that happen, what goes through your mind?"  (*Id.* at PageID #119).  He answered, "[t]hat we have a reason to detain that person."  (*Id.*).  Cox testified that he observed with binoculars Defendant exiting the liquor store with a firearm on his left hip and as Defendant passed the passenger side of Cox's vehicle that Cox visually confirmed the firearm and notified the other officers.  (*Id.* at PageID #122).  Cox does not recall if the full grip of the gun was exposed or if he saw the outline of a gun under Defendant's shirt.  (*Id.* at PageID #123).  When Cox radioed to his fellow officers concerning observing a firearm on Defendant's person, he was focused on "coordinat[ing] this stop in the most effective way possible."  (*Id.* at PageID #128).  When asked why he was seeking to stop Defendant at that point, Cox answered, "[f]or the criminal trespass violation."  (*Id.*).  TFO Cox's testimony supports that the initial intent behind the interaction with Defendant was a brief investigatory stop to determine if Defendant violated O.R.C. § 2911.21, which TFO Cox believed he witnessed.

In Defendant's post-hearing brief, he admits that if the Court accepts the version of facts presented by the agents at the evidentiary hearing, then the "agents would have probable cause to arrest Mr. Dowell."  (ECF No. 30, PageID #226).  This makes the determination of what standard to apply to the stop of Defendant irrelevant because the "reasonable suspicion standard demands

less than probable cause." *United States v. McMullen*, 103 F.4th 1225, 1229 (6th Cir. 2024).
Defendant requests that the Court find that the agents' testimony was not credible and that they
did not have probable cause.  (ECF No. 30, PageID #226).  However, that request assumed that
the Court would find the testimony of Defendant's witness to be "diametrically opposed" to the
testimony of the officers.  (*Id*. at PageID #227).  That is not the Court's finding.

When the officers approached Defendant at the passenger side of the vehicle, Cox testified,
"[w]e pulled him out of the vehicle; at which point, Agent Campbell secured the gun from his
waistband and then we handcuffed him and detained him."  (ECF No. 29, PageID #129).  TFO
Cesaratto confirmed that Agent Campbell retrieved the gun from Defendant's waistband.  (*Id*. at
PageID #154–55).  The police reports submitted to the Court affirm Cox's testimony.  The Incident
Report attached to Defendant's motion states that ATF special agents observed Defendant "exit
the liquor store while possessing a firearm in his left waistband area."  (ECF No. 19, PageID #65).
The report identifies that officers removed a firearm from Defendant's waistband.  (*Id*.).  The
Report of Investigation attached to Defendant's motion confirms that TFO Cox "observed Dowell
exit the liquor store while concealing a firearm in his left waistband area with the handle protruding
from his pants."  (*Id*. at PageID #66).  This report also notes that officers retrieved the firearm from
Defendant's waistband.  (*Id*.).  Government's Exhibit 1 contains an Ohio Department of Public
Safety Investigative Unit Incident/Arrest Report prepared on October 29, 2022 that states TFO
Cox "observed a concealed handgun in Dowell's waistband in the left hip position with the handle
of the firearm protruding."  Govt. Exh. 1.  This report identifies that officers secured the firearm
from Defendant's person.  *Id*.

Ms. Garrett first testified that she *believed* the gun was in the center console of her car
while she and Defendant were in the liquor store on October 28, 2022.  (ECF No. 29, PageID

#194).  She later testified that her firearm *was* in the center console of the car that day.  (*Id*. at PageID #202).  Either way, she did not see the firearm again until an officer placed it on the hood of her car, after she was ordered out of the car.  (*Id*. at PageID #206).  Ms. Garrett initially testified that Defendant might have entered the liquor store "a few minutes behind [her]."  (*Id*. at PageID #207).  When asked for clarification, she stated, "maybe I got out first and he could have came like a couple steps behind me… When I pulled up, he probably came out behind me.  But we was in the store together.  I can't pinpoint exactly that like we opened the door together but we was in the store together." (*Id*.).  She admitted that she left the car before Defendant.  (*Id*. at PageID #210).  If the gun was in the vehicle's center console, this gave Defendant an opportunity to retrieve it unbeknownst to her.  As Ms. Garrett did not witness law enforcement recovering the firearm, her testimony is not inconsistent with what officers say they observed.  Defendant could have removed the firearm from her vehicle prior to entering the liquor store.  Consequently, Ms. Garrett's testimony does not undermine the credibility of the testimony or the various investigative reports that affirm that TFO Cox witnessed a firearm on Defendant's person as he exited the liquor store, and that the officers conducted a stop of Defendant based on that observation.

Defendant is correct that Ms. Garrett's testimony conflicts with TFO Cesaratto's testimony that he saw Defendant in the parking lot of the liquor store with a gun as he entered a red Chevy sedan and left the parking lot about twenty minutes before TFO Cox's initial observation of Defendant.  (ECF No. 30, PageID #226–27; ECF No. 29, PageID #152).  Ms. Garrett testified that she was in possession of her vehicle for the entire day of October 28, 2022 and she was only in the liquor store parking lot once that day.  (ECF No. 29, PageID #196–97).  The Court need not determine who was most credible on this point.  It is irrelevant to the determination of whether there was reasonable suspicion or probable cause at the point when Defendant was apprehended

and the gun at issue was seized.

Nothing in the record subverts TFO Cox's testimony that he observed what he believed to be a firearm on Defendant's person as Defendant exited the liquor store. The Court does not agree with Defendant that TFO Cox's inability to recall whether the handle of the firearm was exposed, covered by clothing, or partially hidden renders his testimony not credible. (ECF No. 30, PageID #226). Rather, TFO Cox's consistent answers regarding his inability to recall the precise details of something he witnessed over a year before the evidentiary hearing weigh in favor of his credibility. As previously noted, the reports prepared after the stop and arrest of Defendant affirm TFO Cox's testimony.

Defendant conceded that the officers had probable cause to arrest Defendant if the Court accepts their version of events. Probable cause is a more stringent requirement than reasonable suspicion, so the Court need not engage in any further analysis. Both versions of events offered to the Court result in a denial of Defendant's motion to suppress. If TFO Cox could not have observed a firearm on Defendant's person because it was in the center console of Ms. Garrett's car and retrieved by law enforcement from same, Defendant admittedly lacks the standing to challenge that search. If TFO Cox observed a firearm on Defendant's person as he exited the liquor store which officers then retrieved from Defendant's waistband, then the officers had the requisite cause to engage in that permissible warrantless encounter because they witnessed Defendant committing a crime.

## IV.    Conclusion

Consequently, Defendant's motion to suppress is **DENIED**. (ECF No. 19). The Court will reset the trial schedule in this matter in a separate order.

**IT IS SO ORDERED.**

Date:  August 6, 2024

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**